# J. J. VAEGEMAST v. ORLIN HESS.[1]

July 1, 1938.

No. 31,777.

*Atwood & Quinlivan,* for appellant.

*Charles L. Clark* and *Phillips & Sherwood,* for respondent.

LORING, JUSTICE.

Alma L. Hess and her husband, Deloss Hess, were killed in the same automobile accident on August 21, 1936. Deloss was insured in the Equitable Life Assurance Society of the United States by two policies in the aggregate sum of $16,052, Alma being named as beneficiary in both policies. The special administrator of her estate

[1]Reported in 280 N. W. 641.

claimed that she survived her husband an appreciable length of time and brought suit against the Equitable to recover the insurance provided for in the two policies. The Equitable paid the money into court setting forth that Orlin Hess, as special administrator of the estate of Deloss Hess, claimed the proceeds of these policies. Thereupon the special administrator of the estate of Deloss Hess was substituted for the Equitable, and the case proceeded upon the issue between the two special administrators. It was tried by the court without a jury, and findings of fact, conclusions of law, and order for judgment were made in favor of plaintiff. The case comes here upon appeal from the judgment entered pursuant to the order. The challenge is to the finding that Alma survived her husband by an appreciable length of time and to the court's rulings in sustaining objections to questions asked of the defendant's medical witnesses as to the relative rapidity of the death of the husband and wife after the accident.

■ At the time of their death Deloss Hess was 27 years of age, his wife was 31, and both were in good health. About three o'clock of the afternoon of August 21, 1936, Deloss was driving his two-passenger automobile in a general easterly direction on a public highway between Starbuck and Glenwood, Minnesota. His wife was sitting beside him on his right. At a point about seven miles west of Glenwood where the highway crosses the Northern Pacific railroad tracks at an angle of about 45 degrees the automobile was struck on its left side at about the door by a westbound gas-electric passenger train traveling at an estimated speed of 30 miles an hour. The collision broke the air line on the train, with the result that the brakes which were set just before the impact could not be released and the train came to a stop with its front end about 850 feet west of the center of the crossing. The automobile was impaled on the coupler, which extended about two feet ahead of the gas-electric car. The automobile was carried along upon the front end of the train to the point where it stopped. Deloss was pinned between the left door and the steering wheel. His wife was thrown out through the right door upon the railroad track, run over by the train, and terribly mangled.

In considering the question of survival we must take the testimony in its most favorable aspect to the plaintiff, since the trial court found that Mrs. Hess survived her husband by an appreciable length of time. Deloss Hess suffered a complete dislocation of the articulation between the skull and atlas bone at the instant of impact; the longitudinal muscles maintaining the relationship were torn and lacerated; the spinal cord was completely severed between the base of the skull and the atlas bone. He suffered no other injury likely to cause death. In the opinion of the plaintiff's medical experts he suffered the loss of both of the critical functions of circulation and respiration instantly or within one or two seconds after the impact of the collision. The defendant's doctors estimated that death occurred from 30 seconds to five minutes after the impact. These divergent views presented a question of fact which the trial court viewed in a light most favorable to the plaintiff.

The defendant does not seriously disagree with the claim of the plaintiff that Mrs. Hess lived from a minute to a minute and a half after the impact. Her body was found lying between the rails, one leg completely severed at the pelvis and again between the knee and ankle; the abdomen was ripped open, and the intestines, uterus, and kidneys were torn out; the top of the skull was crushed in or torn off, and the cerebrum was strewn along the track for some distance, the cerebellum remaining in the skull. The first trace upon the track of injuries to Mrs. Hess was the presence of blood about 132 feet beyond the crossing where the impact occurred. Her left foot was severed from the leg about three inches above the ankle and was found about ten feet farther on. The body was found about 20 feet beyond the severed foot or about 162 feet from the crossing. The body of Mrs. Hess was not embalmed by the usual process of circulatory embalming due to its condition. An autopsy showed that exsanguination had occurred more thoroughly in the body than in the severed limb. The heart was constricted and empty of blood, as were the kidneys and uterus. From these facts plaintiff's medical experts drew the conclusion that Mrs. Hess bled to death and that the heart continued to beat after the severance of

her limb until there was no more blood to be driven out of the arterial system. There was no evidence of injury to the spinal column or of bruises other than of the sheering kind. There was evidence of subcutaneous hemorrhage, which indicated heart action subsequent to the wound. There was also a blood clot in the superior bronchi, which indicated that blood from one of her wounds was drawn into that position by respiration. Medical experts consider that death takes place upon the cessation of the vital functions of respiration and circulation. From the enumerated conditions found at the autopsy of Mrs. Hess' body, plaintiff's medical experts concluded that she did not die until a minute or a minute and a half after the impact; and, as before stated, the defendant's experts have little or no quarrel with this conclusion. The defendant, however, stakes his case upon the proposition that the husband was not instantly killed by the impact. On this question there is a direct conflict between the experts. The court having found in favor of the plaintiff, we need only examine the record with a view to determining whether or not it was justified in so doing. In the opinion of the plaintiff's experts the complete severance of the spinal cord at the point where it occurred to Mr. Hess stopped the functions of circulation and respiration by cutting off the source of nervous energy which stimulated those organs, with the consequence that they ceased immediately to function. The defendant's answer to this was that Mrs. Hess' brain was evidently destroyed when she was run over. This they say would have as effectively cut off the nervous energy as would the severance of Mr. Hess' spinal column. However, leaving aside the fact that the court was justified in believing that Mr. Hess' injury occurred at the moment of impact and that the court was justified in finding that Mrs. Hess' brains were not dashed out until some seconds later, the defendant is confronted with the fact that the testimony of the coroner was to the effect that the remainder of Mrs. Hess' brain other than the cerebrum was found in what was left of her skull when he examined it. The cerebrum, as he expressed it, "was practically out." We

think the trial court was justified in finding that Mrs. Hess survived her husband by an appreciable time.

The defendant contends that the trial court erred in sustaining the plaintiff's objection to inquiries addressed to the defendant's expert witnesses as to the relative rapidity with which each of the injured parties died after sustaining their respective injuries. Counsel for the defendant in their brief say:

"The question propounded to those witnesses was not their opinion as to which of these persons died first. That question would doubtless be improper because it would invade the province of the trier of the facts and call for an opinion on the ultimate question to be decided by the court."

Under the circumstances of this case, where it must be conceded that Mr. Hess received his injury at the moment of impact, the question in effect asked which person died first. But in any event the ruling was without prejudice to the defendant because his witnesses were permitted to go fully into the question as to how long they believed each of the injured parties survived injury.

The judgment is affirmed.